Kenneth J. Grunfeld
Golomb & Honik, P.C.
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Phone: (215) 985-9177
Fax: (215) 985-4169
Email:  kgrunfeld@golombhonik.com
To be admitted *pro hac vice*

Kirk J. Wolden, SBN 138902
Clifford L. Carter, SBN 149621
CARTER WOLDEN CURTIS, LLP
1111 Exposition Boulevard, Suite 602
Sacramento, CA 95815
Phone:  (916) 567-1111
Fax:     (916) 567-1112
Email:  kirk@cwclawfirm.com;
cliff@cwclawfirm.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILLIPP OSTROVSKY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>INTUIT INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. **Breach of Contract**<br>2. **Breach of Implied Covenant**<br>3. **Quasi-Contract**<br>4. **Rescission**<br>5. **Reformation**<br>6. **Conversion**<br>7. **Arizona Consumer Fraud Act**<br>8. **California UCL** |

Plaintiff Phillipp Ostrovsky, individually and on behalf of the class(es) defined below, makes the following allegations based upon information and belief, except as to allegations specifically pertaining to them, which are based on personal knowledge.

///

///

**INTRODUCTION**

1. TurboTax is a tax preparation software, owned and manufactured by Intuit, that is utilized to file more than 35 million tax returns for American taxpayers every year when filing their income tax returns with both the United States Internal Revenue Service ("IRS") and individual states. One of the main benefits of using TurboTax is the ability to electronically file tax returns. This not only results in convenience at the time of filing, but refunds for electronic filings are processed more quickly than for hard copy filings.

2. Pursuant to an agreement with the IRS, TurboTax and 11 other tax preparation providers are required to cumulatively offer 70% of U.S. taxpayers the option to file their taxes for free. For the 2018 tax season, any taxpayer whose adjusted gross income is $66,000 or less is eligible to use tax preparation software from one of these providers to prepare and file their tax returns for free.

3. TurboTax violated its agreement with the IRS by intentionally diverting qualified taxpayers away from its "free filing" program in favor of its paid product offerings. It did this by segregating its "free file" webpage from its primary website and then altering the website's code in order to keep it hidden from search engines like Google so that it would not be easily accessible to qualified taxpayers.

4. TurboTax also marketed its paid offerings as "Free Guaranteed" - so that qualified taxpayers believed they were filing their taxes pursuant to the free-filing program, only to be hit with unexpected charges after they already spent hours entering information and were getting ready to file.

5. As a result of this scheme, TurboTax breached its agreement with the government, took advantage of the U.S. public, and generated millions of dollars of ill-gotten gains from persons who least can afford it.

**PARTIES**

6. Plaintiff Phillipp Ostrovsky is a resident and citizen of Arizona who paid to file his 2018 tax returns using TurboTax despite qualifying for the IRS free filing program.

7. Defendant Intuit Inc. (doing business as "TurboTax") is headquartered in Mountain View, California, and incorporated under the laws of the State of Delaware. TurboTax markets, sells and

operates a tax preparation and filing software product and service.

**JURISDICTION AND VENUE**

8.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different States.  This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District, transacts business in this District, and its principal place of business is located in this District.

10.     This court has personal jurisdiction over Defendant because it has conducted  substantial business in this District, and intentionally and purposefully placed its tax preparation software into the stream of commerce within the District and throughout the United States.

**ALLEGATIONS**

11.     Intuit Inc. is a business and financial software company that develops and sells financial, accounting, and tax preparation software including TurboTax, QuickBooks, and Mint. Its flagship product, TurboTax, is a leading tax preparation software that provides step-by-step guidance for filling out state and federal tax returns and permits users to electronically file their tax returns using a computer or other mobile device. Intuit had revenues of more than $6.2 billion for the 12-month period ending on January 31, 2019.

12.     In October 2002, a consortium of tax preparation providers led by TurboTax known as the "Free File Alliance" entered into a three-year agreement with the IRS to offer free online tax preparation and filing services to taxpayers "least able to afford the electronic filing of their tax returns."

13.     That agreement was entered into for the express benefit of low-income taxpayers.  It has been extended multiple times through the years, most recently in October 2018.  It is entitled the "Eighth Memorandum of Understanding on Service Standards and Disputes between the Internal Revenue Service and Free File, Incorporated" and extends the parties' agreement through October

31, 2021 (the "IRS Free-Filing Agreement").[1]

14.     In exchange for a commitment to provide free filing options "to economically disadvantaged and underserved populations," the federal government "pledged to not enter the tax preparation software and e-filing services marketplace." This commitment from the government protects the viability of the commercial tax preparers' business model by ensuring they can always charge a significant portion of the U.S. population fees for their services.

15.     In fact, TurboTax and its competitors have spent millions of dollars lobbying *against* the IRS creating its own free tax filing system, as well as pushing Congress to codify the IRS Free-Filing Agreement to ensure that a free government-sponsored program cannot ever threaten the industry's profits.

16.     The IRS Free-Filing Agreement provides that members of the Free File Alliance[2] must cumulatively offer 70% of U.S. taxpayers - or approximately 100 million people - the option to file their taxes for free. For the 2018 tax season, any taxpayer whose adjusted gross income is $66,000 or less is eligible to use tax preparation software from one of these providers to prepare and file tax forms for free, although each provider sets its own eligibility requirements.

17.     Because TurboTax is the market leader and has more volume than its competitors, its eligibility requirements are more stringent. Accordingly, TurboTax permits free state and federal filings for any U.S. taxpayer who (a) has an adjusted gross income under $34,000; (b) is eligible for the Earned Income Tax Credit; or (c) is an active military member with an adjusted gross income of $66,000 or less.[3]

18.     But while 70% of U.S. taxpayers are eligible to file for free, *less than 2.5% of eligible taxpayers actually utilize the program*. The reason for this stark discrepancy is due in no small part to an array of deceptive practices employed by TurboTax (and its competitors) to prevent lower-income taxpayers from utilizing the program in favor of its paid product offerings.

---

[1]IRS Free-Filing Agreement, https://www.irs.gov/pub/irs-utl/Eight%20Free%20File%20MOU.pdf (last accessed July 17, 2019).

[2] The tax preparation companies currently participating in the Free File Alliance and bound by the IRS Free-Filing Agreement include: TurboTax, H&R Block, TaxAct, eSmart, 1040NOW.net, FileYourTax.com, FreeTaxReturns.com, FreeTaxUSA, OLT.com, TaxSlayer, exTaxReturn.com, and 1040.com.

[3] *IRS Free File Software Offers*, https://apps.irs.gov/app/freeFile/ (last accessed July 17, 2019).

**Class Action Complaint**

19.      For example, TurboTax's actual free product is referred to as TurboTax "Freedom Edition" - which enables users eligible to complete and e-file their federal tax returns for free in accordance with the IRS Free File program, no matter how many state or federal forms are required to file.  Yet - and as but one example of TurboTax's deceptive practices - TurboTax also offers a different "free" online tax product bearing a similar name: TurboTax "Free Edition."  Despite being heavily marketed, the TurboTax Free Edition is not associated with the IRS Free File program and is a basic software offering that supports only the simplest of tax returns, wherein most users (who would otherwise be eligible for free filing under the IRS Free-Filing Agreement) are forced to pay to file their returns.

20.      On April 22, 2019, *ProPublica*, a non-profit organization focused on investigative journalism, released its first in a series of articles about the effect of TurboTax's deceptive business practices entitled "*Here's How TurboTax Just Tricked You Into Paying to File Your Taxes.*"[4]

21.      The authors first searched "IRS free file taxes" on Google and the first four hits directed them to websites operated by members of the Free File Alliance.



---

[4] Justin Elliott and Lucas Waldron, *Here's How TurboTax Just Tricked You Into Paying to File Your Taxes*, PROPUBLICA (April 22, 2019), https://www.propublica.org/article/turbotax-just-tricked-you-into- paying-to-file-your-taxes (last accessed May 11, 2019).

22.     The very first link was an ad paid for by TurboTax that used the word "free" five times and linked to TurboTax's homepage where TurboTax represented that customers' filings would be free guaranteed: "$0 Fed. $0 State. $0 To File. Easily and accurately file your simple tax returns for FREE."



23.     The authors then clicked on the link and began the process of filing returns for U.S. taxpayers who made under $34,000 and would have otherwise qualified for the IRS free filing program and satisfied TurboTax's eligibility requirements.[5]

24.     For example, the authors created a profile for a house cleaner who made $29,000.  After entering information and answering more than a dozen questions about her finances, the house cleaner was informed that he would have to pay $119.99 to file because his income was derived as an independent contractor.[6]



---

[5] Id.

[6] Id.

25.     The authors then attempted a second scenario whereby they returned to TurboTax.com and clicked on "Free Guaranteed" - again going through the process as a pharmacy cashier without health insurance.  After entering sensitive personal information, the cashier was informed that he would have to pay $59.99 to file his taxes because there is an extra form if the taxpayer does not have health insurance.

To accurately complete your taxes,
you need to upgrade to **TurboTax**
**Deluxe**

Why do I need to upgrade?

**You have Schedule 4, Other Taxes,** and that's just one of the reasons the IRS requires you to file Form 1040.

TurboTax Free Edition does not cover this situation

26.     As recognized by the authors, the IRS Free-Filing Agreement does not parse qualifying participants based on what forms they have to submit, meaning these taxpayers should not have been charged anything to complete the process.

27.     In further examining this issue, the authors noted: "So how did we end up with a product that would make us pay?  We took a close look at the source code of the TurboTax website and noticed something strange.  Even though we clicked on the "FREE Guaranteed" option and met all the requirements to file for free, the company had tagged us as a potential paying customer. In the source code, TurboTax had branded us as "NONFFA."  That stands for *Non Free File Alliance*.  In other words, we were not on track to file for free after all.  Here's what it looks like behind the curtain[7]:

```
ch: /personal-taxes/online/
cc: USD
c2: 2019-04-12T17:44:20.316Z
c5: NONFFA
c6: TT.com
c7: TTCamp
c9: 582c1659-f678-4316-a059-29ee9324cf4c
c14: performance|domComplete
```

[7] *Id.*

**Class Action Complaint**

**- 7 -**

28.     Consequently, even though TurboTax knew these taxpayers qualified for free filing, they were never on track to file for free.  The reason for this is that TurboTax's actual free filing version (the "Freedom Edition") is not even available through its primary website - a fact TurboTax itself admits (highlighting added):



29.     Indeed, on TurboTax's main website, under its "Products & Pricing Page," only "Free Edition," "Deluxe," "Premier," and "Self-Employed" products were listed, but "Freedom Edition" was nowhere to be found.  Now, a "Free Edition" exits.[8]

30.     Following publication of the initial article, ProPublica published a follow-up article entitled "Here Are Your Stories of Being Tricked Into Paying by TurboTax. You Often Need the Money" describing the stories of dozens of individuals who could not file their taxes for free via TurboTax even though they were eligible to do so.[9]

31.     For example, one taxpayer was unemployed and recovering from chemotherapy, while her husband was diagnosed with Parkinson's disease and only works part time.  She was charged almost $200 by TurboTax while earning less than $33,000; money that could have helped pay the rent.  Numerous others had similar stories.[10]

---

[8] *Intuit TurboTax Products and Pricing*, https://turbotax.intuit.com/personal-taxes/online/ (accessed in May 2019 and again July 17, 2019).

[9] Ariana Tobin, Justin Elliott and Meg Marco, *Here Are Your Stories of Being Tricked Into Paying by TurboTax. You Often Need the Money*, PROPUBLICA (April 26, 2019), https://www.propublica.org/article/here-are-your-stories-of-being-tricked-into-paying-by-turbotax-you-often-need-the-money (last accessed July 17, 2019).

[10] *See Id.*

*Footnote continued on next page*

32.     On April 26, 2019, ProPublica published an additional article entitled "TurboTax Deliberately Hid Its Free File Page From Search Engines" that walked through how Turbotax deliberately hid its truly free "Freedom Edition" product from search engine results.[11]  Specifically, TurboTax altered the code on its website to tell search engines like Google not to list its free filing webpage.

33.     From at least January through April 27, 2019, TurboTax's Free File site included in its coding the phrase "noindex,nofollow" which instructed the website not to show up in search engine results.



34.     By contrast, the website with TurboTax's paid offerings, TurboTax.com, included the coding "index,follow" - ensuring it would be picked up by search engines like Google.



35.     The ProPublica authors also discovered that TurboTax's primary competitor, H&R Block, engaged in similar tactics to hide its free filing website from search engines,[12] and published internal guidance from H&R Block explicitly instructing its customer service staff to direct customers to its paid offerings, regardless of whether they qualify for the free filing program. "Do not send clients to this Web Site unless they are specifically calling about the Free File program", the guidance states, referring to the website with H&R Block's free option.  "We want to send users

---

[11] Justin Elliott, *TurboTax Deliberately Hid Its Free File Page From Search Engines,* PROPUBLICA (April 26, 2019), https://www.propublica.org/article/turbotax-deliberately-hides-its-free-file-page-from-search-engines (last accessed July 17, 2019).

[12] *Id.*

*Footnote continued on next page*

to our paid products before the free product, if at all possible."[13]

36.     As a result of these deceptive tactics by industry participants, only a tiny fraction of eligible taxpayers took advantage of the IRS Free File program.  While more than 100 million taxpayers were eligible to file for free through the Free File program in fiscal year 2018, fewer than 2.5 million, less than 2.5% of eligible taxpayers, actually did so.  Given this abysmal participation rate, the national taxpayer advocate recently said that the IRS free filing program "is failing to achieve its objectives and should be substantially improved or eliminated."[14]

37.     Equally troubling, TurboTax has refused to take responsibility for its actions.  On May 9, 2019, ProPublica published another follow-up article entitled "Listen to TurboTax Lie to Get Out of Refunding Overcharged Customers" tracking how 16 qualified free-file taxpayers sought refunds from TurboTax but were told by TurboTax representatives that the truly free version - Freedom Edition – is a government product that is not run by TurboTax.[15]  Ten other people reported being told by TurboTax representatives that ProPublica's stories were inaccurate, or that its coverage is "fake news" or "fictitious."

38.     TurboTax's representations are completely inconsistent with its obligations under the IRS Free-Filing Agreement.  Section 2 of the Agreement states that "the IRS and FFI (previously Free File Alliance or Alliance) agree that to serve the greater good and ensure the long-term stability of FFI, the scope of this program is focused on covering the taxpayers least able to afford e-filing their returns on their own."  It further provides that "the federal government has pledged to not enter the tax preparation software and e-filing services marketplace" in consideration for the FFI's agreement to "cover[] the taxpayers least able to afford e-filing their returns on their own."

39.     Pursuant to the IRS Free-Filing Agreement, TurboTax had numerous obligations in furtherance of its duties, a selection of which include:

---

[13] Justin Elliott and Paul Kiel, *TurboTax and H&R Block Saw Free Tax Filing as a Threat — and Gutted It,* PROPUBLICA (May 2, 2019), https://www.propublica.org/article/intuit-turbotax-h-r-block-gutted-free-tax-filing-internal-memo (last accessed July 17, 2019).

[14] Justin Elliott and Lucas Waldron, *Here's How TurboTax Just Tricked You Into Paying to File Your Taxes,* PROPUBLICA (April 22, 2019), https://www.propublica.org/article/turbotax-just-tricked-you-into-paying-to-file-your-taxes (last accessed July 17, 2019).

[15] Justin Elliott and Meg Marco, *Listen to TurboTax Lie to Get Out of Refunding Overcharged Customers*, PROPUBLICA (May 9, 2019), https://www.propublica.org/article/listen-to-turbotax-lie-to-get-out-of-refunding-overcharged-customers (last accessed May 11, 2019).

§ 2. [Free File] Members shall work in concert with the IRS to increase electronic filing of tax returns, which includes extending the benefits of online federal tax preparation and electronic filing to economically disadvantaged and underserved populations at no cost to either the individual user or to the public treasury. Further, the IRS and FFI (previously Free File Alliance or Alliance) agree that to serve the greater good and ensure the long-term stability of FFI, the scope of this program is focused on covering the taxpayers least able to afford e-filing their returns on their own. In recognition of this commitment, the federal government has pledged to not enter the tax preparation software and e-filing services marketplace. Members shall also:

§ 2.1. Make tax return preparation easier and reduce the burden on individual taxpayers, particularly the economically disadvantaged and underserved populations[.]

§ 2.3. Provide greater service and access to the Services to taxpayers[.]

§ 4.15.14. [Free File] Members must clearly list their free customer service options. This disclosure must be available on the Member's Free File Landing Page (or such page must have a clear and prominent link to such disclosures directly from this page). [Free File] Members must provide taxpayers a free electronic method to obtain a copy and learn the status of their electronically filed tax return.

§ 4.19.2. Ineligibility Notification. Free File Member programs must unequivocally inform taxpayers who are ineligible for the free offer at the earliest feasible point:

(i)     That they are ineligible for the Free File offer, and

(ii)    The reason that they are not eligible for the offer, and

(iii)   The taxpayer shall be directed back to the IRS Free File Landing Page as the first and most prominent alternative action so that they may immediately consider other Free File offers available from the Free File Program, and

(iv)    The disqualification practice of each Member must adhere to the standard messaging, language and formatting guidance to be provided by FFI in consultation with the IRS.

(v)     The taxpayer next may be offered a free alternative

**Class Action Complaint**

for completion of their return, provided that the taxpayer is covered by the Program limit of being among the lowest 70 percent of taxpayers.

(vi) The taxpayer would next be offered the option to continue on the Free File Member's site and pay a fee - which is fully disclosed - to file their federal and/or state return.

40.     TurboTax breached these provisions and others by engaging in the deceptive and misleading practices described herein.  Indeed, TurboTax has gone to great lengths to protect the viability of its business by eliminating the threat of a free government-sponsored program that would drastically threaten the industry's profits, while at the same time actively disclaiming its obligations under the IRS Free-Filing Agreement in order to maximize its own profits at the expense of the country's most vulnerable citizens.

### FACTS AS TO PLAINTIFF

41.     Plaintiff Ostrovsky is a 32 year old resident of Phoenix, Arizona.  He is a college student, currently enrolled at Maricopa County Community College, and an aspiring actor.

42.     Mr. Ostrovsky has been using TurboTax since at least 2013 to file his state and federal income taxes.  He was never assessed a tax preparation processing fee until 2018.

43.     In the 2018 tax year Mr. Ostrovsky reported an adjusted gross income of less than $6,000.00.  He therefore qualified for the IRS free file program and is an intended beneficiary of the IRS Free-Filing Agreement.  TurboTax advertises on its website, commercials and social media accounts that it offers free filing for simple tax returns.  His 2018 return was only 10 pages long.

44.     However, after preparing his taxes using a purportedly free version of TurboTax, the website did not allow him to file for free but required that he pay $119.97 in order to file his taxes after entering a significant amount of sensitive personal information.  As part of that amount, Mr. Ostrovsky's filing fees consisted of a $39.99 charge for his federal return, state return and direct deposit.

45.     After Mr. Ostrovsky filed a complaint about his processing fees, TurboTax refund him $39.99.

///

///

**CLASS ACTION ALLEGATIONS**

46.     Class Description: Plaintiff bring this class action on behalf of himself and other similarly situated individuals. Pursuant to Federal Rules of Civil Procedure 23(b)(2), (b)(3) and (c)(4), as applicable, Plaintiff seeks certification of the following classes of individuals:

> All residents of the United States who qualified to file their taxes for free pursuant to the IRS Free-Filing Program for the 2018 tax season and satisfied TurboTax's eligibility requirements but nevertheless were charged by TurboTax a sum of money to file their tax returns (the "Nationwide Class").

> All residents of Arizona who qualified to file their taxes for free pursuant to the IRS Free-Filing Program for the 2018 tax season and satisfied TurboTax's eligibility requirements but nevertheless were charged by TurboTax a sum of money to file their tax returns (the "Arizona Subclass").

47.     Excluded from the classes are Defendant's officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, and assigns.  Also excluded from the classes are any judge, justice or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

48.     Numerosity: The proposed classes are so numerous that individual joinder of all members is impracticable.

49.     Common Questions of Law and Fact Predominate: There are many questions of law and fact common to Plaintiff and members of the classes, and those questions substantially predominate over any questions that may affect individual class members.  Common questions of law and fact include:

      a.     Whether Plaintiff is a third-party beneficiary to the IRS Free-Filing Agreement;

      b.     Whether TurboTax breached its obligations under the IRS Free-Filing Agreement;

      c.     Whether Plaintiff and members of the classes suffered injury, including ascertainable losses, as a result of TurboTax's breach of the IRS Free-Filing Agreement;

      d.     Whether TurboTax's conduct constituted unfair and deceptive trade practices actionable under applicable consumer protection laws;

      e.     Whether Plaintiff and members of the classes are entitled to recover actual damages

and/or statutory damages; and

    f.    Whether Plaintiff and members of the classes are entitled to equitable relief, including injunctive relief and restitution.

50.    All members of the proposed classes are ascertainable by objective criteria. TurboTax has access to addresses and other contact information for members of the classes, which can be used for providing notice to many class members.

51.    Typicality: Plaintiff's claims are typical of the claims of the members of the proposed classes. Plaintiff and all members of the classes have been similarly affected by the actions of Defendant.

52.    Adequacy of Representation: Plaintiff will fairly and adequately represent and protect the interests of members of the classes. Plaintiff has retained counsel with substantial experience in prosecuting complex and class action litigation. Plaintiff and counsel are committed to vigorously prosecuting this action on behalf of class members, and have the financial resources to do so.

53.    Superiority of Class Action: Plaintiff and the members of the classes suffered, and will continue to suffer, harm as a result of Defendant's conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the classes is impractical. Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class members.

## COUNT I
### Breach of Contract
### *(On Behalf of Plaintiff and the Nationwide Class)*

54.    Plaintiff incorporates the foregoing paragraphs as if set forth fully herein.

55.    Plaintiff brings this cause of action on behalf of himself and the Nationwide Class.

56.    The IRS Free-Filing Agreement is an agreement between the IRS and the FFI, of which

TurboTax is a member.

57.     The IRS Free-Filing Agreement was entered into for the express benefit of low-income taxpayers.

58.     Plaintiff and members of the Nationwide Class are third-party beneficiaries to the IRS Free-Filing Agreement.

59.     TurboTax breached its agreement with the IRS and its duties and obligations to Plaintiff and members of the Nationwide Class as third-party beneficiaries by:

     a.     Failing to comply with Section 2.1, which requires TurboTax to "[m]ake tax return preparation easier and reduce the burden on individual taxpayers, particularly the economically disadvantaged and underserved populations;"

     b.     Failing to comply with Section 2.3, which requires TurboTax to "[p]rovide greater service and access to the Services to taxpayers," with "Services" being defined in Section 1.13 as "free, online tax return preparation and Filing of Federal individual income tax returns;"

     c.     Failing to comply with Section 4.15.14 of the Agreement, which requires TurboTax to "clearly list [its] free customer service options;" and

     d.     Failing to comply with Section 4.19.2 of the Agreement, which requires TurboTax to "unequivocally inform taxpayers who are ineligible for the free offer at the earliest feasible point" and that the "taxpayer shall be directed back to the IRS Free File Landing Page as the first and most prominent alternative action so that they may immediately consider other Free File offers available from the Free File Program."

60.     Plaintiff and members of the Nationwide Class have been damaged by TurboTax's breach of its contractual obligations because they qualified for free filing under the IRS Free-Filing Agreement but were required by TurboTax to pay to file their returns.

61.     Plaintiff individually and on behalf of the Nationwide Class seek recovery for damages, equitable relief, and injunctive relief requiring TurboTax to comply with its contractual obligations.

**COUNT II**
**Breach of Implied Covenant of Good Faith And Fair Dealing**
*(On Behalf of Plaintiff and the Nationwide Class)*

62.     Plaintiff incorporates the foregoing paragraphs as if set forth fully herein.

63.     A covenant of good faith and fair dealing is implied in every contract and imposes upon each party a duty of good faith and fair dealing in its performance. Common law calls for substantial compliance with the spirit, not just the letter, of a contract in its performance.

64.     Plaintiff's and the Class Members' tax preparation contracts require TurboTax to provide tax preparation services consistent with law and TurboTax's promises to the provide free tax preparation services to those that qualify.

65.     TurboTax breached the implied covenant of good faith and fair dealing by, among other things, failing to: make tax return preparation easier and reduce the burden on taxpayers, provide free, online tax return preparation services, list and make available free customer service options, and inform eligible taxpayers of all options for free tax preparation and filing.

66.     As a direct, proximate, and legal result of the aforementioned breaches of the covenant of good faith and fair dealing, Plaintiff and the Classes have suffered damages because they qualified for free filing but the contracts did not permit free filing such that taxpayers were required to pay to file their returns.

**COUNT III**
**Restitution for Breach of a Quasi-Contract Claim**
*(Alternatively, on Behalf of Plaintiff and the Nationwide Class)*

67.     Plaintiff incorporates the foregoing paragraphs as if set forth fully herein.

68.     By means of Defendant's wrongful conduct alleged herein, Defendant knowingly caused Plaintiff and members of the Classes to pay for tax filing services by or under fraudulent, unfair, deceptive, coercive, unconscionable, and/or oppressive means or conditions.

69.     Defendant received and retained wrongful benefits from Plaintiff and members of the Classes. In so doing, Defendant knew or should have known that its actions would have caused Plaintiff and members of the Classes to pay money when they otherwise would not have.

70.     As a result, Defendant has been unjustly enriched at the expense, and to the detriment, of Plaintiff and members of the Class. A person is enriched if the person TurboTax received a benefit at the expense of Plaintiff and members of the Class.

71.     Defendant's benefit is traceable to, and resulted directly and proximately from, the wrongful conduct alleged herein such that it is unjust for TurboTax to retain that benefit.

72.     It is unfair and inequitable for Defendant to be permitted to retain the benefits it received, without justification, from the wrongful conduct alleged herein.

73.     The financial benefits derived by Defendant rightfully belong to Plaintiff and members of the Classes, in whole or in part.  Defendant should be compelled to account for and disgorge in a common fund for the benefit of Plaintiff and members of the Classes all wrongful or inequitable proceeds received from them.

74.     Defendant's fraudulent, unfair, deceptive, coercive, unconscionable, unilateral, and/or oppressive conduct demonstrates a lack of mutual consideration and unlawful, rendering any agreement that may exist unenforceable, unconscionable, inequitable, void, or voidable.

## COUNT IV
### Rescission
### *(On Behalf of Plaintiff and the Nationwide Class)*

75.     Plaintiff incorporates the foregoing paragraphs as if set forth fully herein.

76.     In the event a valid agreement is found to exist between Defendant and members of the Classes, any such agreement should be rescinded.

77.     Consent by Plaintiff and members of the Class to the alleged terms was not real or free, and/or was given under force, mistake, duress, coercion, fraud, and/or without consent or mutual material consideration.

78.     The terms governing the parties' relationship were not fully disclosed to Plaintiff and members of the Classes.  Thus, Plaintiff and members of the Classes lacked proper notice concerning such terms.

79.     The terms governing the parties' relationship contain undisclosed, confusing, misleading, or abstruse conditions and terminology.  Defendant unilaterally drafted and imposed these terms on Plaintiff and the Classes, which render any agreement between the parties an unenforceable contract of adhesion.

80.     Moreover, Plaintiff and other members of the Classes were forced or induced to enter into any agreement between the parties by fraud or deceit, insofar as Defendant manipulated the market

to avoid a government option for free filing, misrepresented or omitted the full terms, nature, and fees associated with the filing.  For example:

    (i)     terms were not fully disclosed to Plaintiff or members of the Classes;

    (ii)     money was captured, maintained and kept by Defendant without consent and according to a scheme or structure that dissuaded, disincentivized or made it impossible for Plaintiff and Class members to obtain their own funds; and

    (iii)     Defendant's website and representatives, at times, cannot even adequately or accurately assist Class members with accessing or understanding the terms at issue.

81. Defendant intended, knew, or reasonably should have known, that representations it has made and continues to make (and omissions it has not made and continues not to make) in connection with free filing options were materially false, deceptive, and misleading.

82. As a direct and proximate result of the conduct alleged herein, Plaintiff and members of the Classes believed, and reasonably so, that they had no free filing option.

83. With any possible consent given only under force, mistake, fraud, coercion, duress, and/or oppression, as set forth above, Plaintiff seeks rescission of any allegedly valid agreement governing the parties relationship and restitution for all charges or fees incurred, on behalf of himself and members of the Classes.

**COUNT V**
**Reformation**
*(On Behalf of Plaintiff and the Nationwide Class)*

84. Plaintiff incorporates the foregoing paragraphs as if set forth fully herein.

85. In the event a valid agreement is found to exist between the parties, any such agreement should be reformed.

86. Consent by Plaintiff and members of the Classes to the terms were not real or free, and/or was given under force, mistake, duress, coercion, fraud, and/or without consent or mutual material consideration.

87. The terms were not fully disclosed to Plaintiff and members of the Classes.  Thus, Plaintiff and members of the Classes lacked proper notice concerning such terms.

88.     The terms contain undisclosed, confusing, misleading, abstruse conditions and terminology. Defendant unilaterally drafted and imposed these terms on Plaintiff and the Classes, which renders any agreement between the parties an unenforceable contract of adhesion.

89.     Plaintiff and other members of the Classes were induced to enter into any agreement with Defendant insofar as Defendant misrepresented or omitted the full terms and true fees associated with free tax filing.  For example:

      (i)     terms were not fully disclosed to Plaintiff or members of the Classes;

      (ii)    money was captured, maintained and kept by Defendant without consent and according to a scheme or structure that dissuaded, disincentivized or made it impossible for Plaintiff and Class members to obtain their own funds; and

      (iii)   Defendant's website and representatives, at times, cannot even adequately or accurately assist Class members with accessing or understanding the terms at issue.

90.     Defendant intended, knew, or reasonably should have known, that representations it has made and continues to make (and omissions it has not made and continues not to make) were materially false, deceptive, and misleading.

91.     Defendant's fraud or bad faith is further evidence by its breach of the implied covenant of good faith and fair dealing.

92.     By common law or statute, the terms governing the parties impose upon each a duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain.  Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

93.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified.  Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

**Class Action Complaint**
**- 19 -**

94.     Defendant has breached the covenant of good faith and fair dealing through its wrongful actions alleged herein, through both affirmative misrepresentations and purposeful omissions, and Plaintiff and members of the Classes have suffered damages as a result.

95.     In addition, any agreement between the parties not only evidences Defendant's fraud or bad faith as set forth above, but also accident or mistake.

96.     The same conduct set forth above could also demonstrate a mutual mistake, insofar as both sides to any agreement were mutually mistaken insofar as the option for free tax filing.  This reveals a potential misunderstanding of each other's intent based on the terms governing the relationship, to the extent that such a relationship is found to have been validly formed.  Further, mutual mistakes were relied on by the parties.

97.     Accordingly, to the extent the parties have entered into any form of an agreement, the agreement should be reformed with reasonable and fair terms that are specific and determinable.

98.     As a direct and proximate result of the conduct alleged herein, Plaintiff and members of the Classes believed, and reasonably so, that they had no free filing option.

### COUNT VI
### Conversion
#### *(On Behalf of Plaintiff and the Nationwide Class)*

99.     Plaintiff incorporates the foregoing paragraphs as if set forth fully herein.

100.    Defendant had and continues to have a duty to maintain and preserve the funds of Plaintiff and members of the Classes, and to prevent their diminishment through their own wrongful acts.

101.    By placing Plaintiff and Class members' funds into accounts without consent, failing to inform them of material terms, making it difficult or impossible to understand the fees associated with those accounts, or the availability of free filing options, charging unusual and unknown fees, Defendant has, without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiff and Class members without legal justification.

///

///

///

///

102.    Defendant has wrongfully asserted possession, collected fees, or created a scheme and circumstances that dissuades or disincentivizes use of one's own money from Plaintiff and members of the Classes.  Defendant has taken specific and readily identifiable funds from accounts.

103.    Defendant retained these funds unlawfully and without the knowing consent of Plaintiff or other members of the Classes.

104.    Defendant intended to permanently deprive Plaintiff and the Classes of these funds.

105.    These funds are properly owned and identifiable by Plaintiff and members of the Classes, not Defendant.  Yet Defendant now claims that it is entitled to the funds' ownership, contrary to the rights of the Plaintiff and members of the Classes.

106.    Plaintiff and the members of the Classes are entitled to immediate possession or repossession of these funds.  Defendant has wrongfully converted these specific and readily identifiable funds.

107.    As a direct and proximate result of this wrongful conversion, Plaintiff and members of the Classes have suffered and continue to suffer damages.

108.    By reason of the foregoing, Plaintiff and the members of the Classes are entitled to recover from Defendant all damages and costs permitted by law, including all amounts that Defendant has wrongfully converted.

**COUNT VII**
**Violations of the Arizona Consumer Fraud Act**
**(On Behalf of Plaintiff and the Arizona Class)**

109.    Plaintiff incorporates the foregoing paragraphs as if set forth fully herein.

110.    The Arizona Consumer Fraud Act, § 44-1521, *et seq.* prohibits the "use or employment . . . of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression, or omission."

111.    Defendant has engaged in practices violative of the Arizona Consumer Fraud Act, as alleged herein.  For example, Defendant engaged in unlawful conduct, made affirmative misrepresentations or omissions, or otherwise violated the Arizona Consumer Fraud Act by, *inter alia*, knowingly, intentionally, and recklessly misleading Plaintiff and members of the Class about the terms, fees, and other features or conditions associated with the free tax filing options available to them.

**Class Action Complaint**
**- 21 -**

112.    Further, Defendant has violated consumer protection by coercing, manipulating or forcing them into this disadvantageous relationship by not making available free tax filing options as required.

113.    To the extent applicable, free tax filing options intended and anticipated that Plaintiff and other members of the Classes would rely on the company's misrepresentations, or acts of concealment and omissions, including obfuscating the website and availability of truly free tax filing options.  Further, to the extent applicable, reliance can be presumed under the circumstances, especially since objectively, no one would choose not to accept a free service over a paid one.

114.    Defendant's conduct proximately caused Plaintiff and members of the Classes to suffer palpable injury, including but not limited to paying for tax filing that they would otherwise would not have to pay for in whole or in part, and making it difficult or impossible to take advantage of truly free tax filing options due to the structure and nature of the steps taken by Defendant.

115.    As redress for Defendant's repeated and ongoing violations, Plaintiff and the Classes are entitled to, *inter alia*, damages and declaratory or injunctive relief.

## COUNT VIII
### Violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq.
*(On Behalf of Plaintiffs and the Nationwide Class)*

116.    Plaintiff incorporates the foregoing paragraphs as if set forth fully herein.

117.    Plaintiff brings this cause of action on behalf of himself and the Nationwide Class.

118.    Defendant is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

119.    Defendant resides in California and violated Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL") by engaging in unfair and deceptive business acts and practices.

120.    Through the actions alleged herein, Defendant has engaged, and continues to engage, in unfair, fraudulent, and deceptive business practices in violation of the UCL.

121.    Defendant has engaged in unfair business acts and practices by taking actions to reduce public awareness of and access to TurboTax "Freedom Edition."  As alleged, the gravity of harm to Plaintiff and the proposed Nationwide Class from Defendant's acts and practices far outweighs any legitimate utility of that conduct; Defendant's conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the members of the proposed Nationwide

Class; and Defendant's conduct undermines or violates the stated policies underlying the Consumers Legal Remedies Act-to protect consumers against unfair and sharp business practices and to promote a basic level of honesty and reliability in the marketplace.

122.    Defendant has also engaged in fraudulent and deceptive acts and practices by making misrepresentations likely to deceive reasonable consumers, including employing deceptive and manipulative marketing and product design schemes.  These actions violate the terms and spirit of the IRS Free-Filing Agreement and undermine the public policy goals of the free file program, to the detriment of low-income taxpayers, the third-party beneficiaries to the Agreement.

123.    Defendant's unfair, fraudulent, and deceptive business acts and practices include, but are not limited to:

a.    Adding code to its TurboTax Free File Website that prevents it from appearing in online search results, rendering the site non-discoverable by consumers searching on Google or other search engines;

b.    Upon information and belief, associating its Google Search Ads for its paid products with keywords likely to be used by consumers searching for the IRS Free File program;

c.    Not providing an option for users to navigate directly from the TurboTax Main Website to the TurboTax Free File Website;

d.    Deliberately choosing not to inform TurboTax customers of Intuit's Free File product, TurboTax "Freedom Edition," even after customers share information with Intuit indicating their eligibility for it;

e.    Intentionally obscuring and failing to disclose the differences between TurboTax "Free Edition" and Intuit's Free File product, TurboTax "Freedom Edition," knowing that reasonable consumers are likely to confuse these two products with nearly identical names;

f.    Misrepresenting to consumers that TurboTax "Free Edition," "Deluxe," "Premiere," and "Self-Employed" are the only TurboTax online products, when in fact TurboTax "Freedom Edition" is a fifth product offering;

g.    Misrepresenting to Free File-eligible consumers that a particular paid product is the best product for them;

h.    Misrepresenting to free file-eligible consumers who enter tax information unsupported by TurboTax "Free Edition" that they will need to upgrade to complete and file their return;

i.    Advertising "FREE Guaranteed" tax filing services when in fact only a small percentage of consumers are able to complete their tax returns for free on the

TurboTax primary website;

j.      Heavily marketing TurboTax "Free Edition" in a manner that makes it likely to be confused with TurboTax's "Freedom Edition;" and

k.      Requiring consumers to invest substantial time and effort inputting their tax return information through the TurboTax "Free Edition" software before alerting them that they cannot complete their returns using "Free Edition," and then manipulating them into paying for various product upgrades.

124.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers who were eligible for Free File into using and paying for TurboTax's paid products.

125.    As a direct and proximate result of Defendant's unfair and fraudulent acts and practices, Plaintiff and members of the Nationwide Class were injured and lost money or property, including the amounts paid to TurboTax or deducted from their returns as part of the filing process.

126.    Defendant acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law, and recklessly disregarded the rights of Plaintiff and members of the Nationwide Class.

127.    Plaintiff and members of the Nationwide Class seek all monetary and non-monetary relief allowed by law, including restitution of all monies paid to Intuitfrom its unfair and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under California Code  of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the proposed Classes, respectfully request that this Court:

a.      Certify this action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2), (b)(3), and/or (c)(4);

b.      Appoint Plaintiff as Class Representative and his counsel as Class Counsel pursuant to Federal Rule of Civil Procedure 23(g);

c.      Find Defendant's conduct was unlawful as alleged herein;

d.      Enjoin Defendant from engaging in further unlawful conduct as alleged herein;

e.      Rescission of the agreement between the parties or reformation of that agreement:

f.    Award Plaintiff and the class members nominal, actual, restitution, compensatory, and consequential damages;

g.    Award Plaintiff and class members statutory damages and penalties, as allowed by law;

h.    Award Plaintiff and class members pre-judgment and post-judgment interest;

i.    Award Plaintiff and class members reasonable attorneys' fees, costs, and expenses; and

j.    Grant such other relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff and members of the proposed classes demand a trial by jury.

Date:  September 18, 2019                    Respectfully submitted,


*/s/ Kirk J. Wolden*
Kirk J. Wolden, Esq. (SBN 138902)
**CARTER WOLDEN CURTIS, LLP**
1111 Exposition Boulevard, Suite 602
Sacramento, CA 95815
Phone: (916) 567-1111
Fax:     (916) 567-1112
Email: kirk@cwclawfirm.com


*Attorneys for Plaintiff and the Proposed Classes*